## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEAMFITTERS UNION, LOCAL 420 WELFARE FUND, STEAMFITTERS UNION, LOCAL 420 PENSION FUND, STEAMFITTERS UNION, LOCAL 420 SUPPLEMENTAL RETIREMENT PLAN, STEAMFITTERS UNION, LOCAL 420 APPRENTICESHIP TRAINING FUND, SCHOLARSHIP FUND OF STEAMFITTERS LOCAL UNION NO. 420, and STEAMFITTERS UNION, LOCAL 420 INDUSTRY ADVANCEMENT FUND 14420 Townsend Road Philadelphia, PA 19154, | : : : : : : : : : : : : : : | CIVIL ACTION NO. |

and

LOCAL UNION NO. 420 OF THE UNITED
 ASSOCIATION OF JOURNEYMEN
 AND APPRENTICES OF THE
 PLUMBING AND PIPEFITTING
 INDUSTRY OF THE UNITED STATES
 AND CANADA
14420 Townsend Road
Philadelphia, PA 19154,

               Plaintiffs,

       v.

PARADIGM MECHANICAL, LLC
805 West 5th Street, Suite 11
Lansdale, PA 19446,

and

ELIZABETH O'MARA
Paradigm Mechanical, LLC
805 West 5th Street, Suite 11
Lansdale, PA 19446,

             Defendants.      :

# COMPLAINT

## INTRODUCTION

1.      This is an action to collect delinquent employee benefit fund contributions, union dues, and other authorized employee deductions from Defendant Paradigm Mechanical, LLC (hereinafter the "Company" or "Employer") and Elizabeth O'Mara (hereinafter "O'Mara") due pursuant to the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947, as amended (hereinafter "LMRA"), 29 U.S.C. § 185.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to §502(a)(3)(B), (d)(1) and (f) and §4301(a)(1), (b) and (c) of ERISA, 29 U.S.C. §§1132 (a)(3)(B), (d)(1) and (f) and §1451(a)(1), (b) and (c), respectively, and §301(a) of LMRA, 29 U.S.C. §185(a).

3.      This Court is one of proper venue under ERISA §§502(e)(2) and 4301(d), 29 U.S.C. §§1132(e)(2) and 1451(d), because all of the Plaintiffs and the Defendants have offices in Pennsylvania.

## PARTIES

4.      At all times relevant hereto, Plaintiffs Steamfitters Local Union 420 Welfare Fund (hereinafter "Welfare Fund"), Steamfitters Local Union 420 Pension Fund (hereinafter "Pension Fund"), Steamfitters Local Union 420 Supplemental Retirement Plan (hereinafter "SRP"), Steamfitters Local Union 420 Apprenticeship Training Fund (hereinafter "Apprenticeship Fund"),

2

and the Scholarship Fund of Steamfitters Local Union No. 420 (hereinafter "Scholarship Fund") (collectively the "ERISA Funds") are trust funds established under 29 U.S.C. § 186(c)(5) and "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

5.      Plaintiff Steamfitters Union, Local 420 Industry Advancement Fund (hereinafter "Industry Fund") is a fund created for the purpose of fostering and advocating the interests of the construction and service industry in the air conditioning and refrigeration fields.

6.      Plaintiff Local Union No. 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereinafter the "Union") is an unincorporated association, commonly referred to as a labor union, and is the exclusive representative for the purposes of collective bargaining of certain employees of Defendant Company who are and/or were employed in an industry affecting interstate commerce within the meaning of 29 U.S.C. §§152(5), (6) and (7), 185(a) and 1002 (4), (11), and (12).

7.      The ERISA Funds, the Industry Fund, and the Union maintain their principal place of business and are administered from offices listed in the caption which are located in the Eastern District of Pennsylvania.

8.      Defendant Company is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) which maintains the business address listed in the caption.

9.      Defendant O'Mara is the president and owner of the Defendant Company.

10.      On September 22, 2011, Defendant O'Mara signed a Consent and Approval Statement on behalf of the Defendant Company in which it agreed to be bound by the collective bargaining agreement between the Union and the Servicing Contractors Association of Greater

3

Delaware Valley, Inc. ("SCA") as well as an agreement titled "Amendment to Collective Bargaining Agreement" in which the Defendant Company adopted the changes that had recently been adopted to that collective bargaining agreement. A true and correct copy of the SCA Consent and Approval Statement is attached hereto as Exhibit A.

11.     By virtue of that SCA Consent and Approval Statement the Employer was bound by the collective bargaining agreement between the SCA and the Union that was effective between May 15, 2014, and May 14, 2017 ("SCA CBA"). A true and correct copy of the SCA CBA is attached hereto as Exhibit B.

12.     In addition, on May 27, 2014, Defendant O'Mara signed a Consent and Approval Statement on behalf of the Defendant Company in which it agreed to be bound by the collective bargaining agreement between the Union and the Mechanical Contractors Association of Eastern Pennsylvania, Inc. ("MCA"). A true and correct copy of the MCA Consent and Approval Statement is attached hereto as Exhibit C.

13.     By virtue of the MCA Consent and Approval Statement the Defendant Company was bound by the collective bargaining agreement between the MCA and the Union that was effective between May 1, 2014, and April 30, 2017 ("MCA CBA"). A true and correct copy of the MCA CBA is attached hereto as Exhibit D.

14.     Pursuant to those collective bargaining agreements, the Defendant Company was required:

(a)     to make full and timely payments to the ERISA Funds, Industry Fund, and the Union;

(b)     to file monthly remittance reports with the ERISA Funds, Industry Fund, and the Union listing all employees for whom contributions were due under the collective bargaining agreement and Alumni Agreement, and the total number of hours each such employee worked during that month;

4

(c)     to produce, upon request by the ERISA Funds, Industry Fund, and/or the Union, individually or jointly, all books and records deemed necessary to conduct an audit of the Company's record concerning its obligations to the Funds, the Association, and/or the Union;

(d)     to pay interest, liquidated damages, and all costs of litigation, including attorneys' fees expended by the ERISA Funds, Industry Fund, and the Union to collect any amounts due as a consequence of the Company's failure to comply with its contractual obligations as described in subparagraphs (a), (b), or (c); and

(e)     to be bound by the Trust Documents that govern the ERISA Funds and Industry Fund, and the policies promulgated by the Trustees of those Funds pursuant to those Trust documents.

## COUNT I
### Plaintiffs v. Paradigm Mechanical, LLC

15.     The above paragraphs are incorporated herein by reference as though duly set forth at length.

16.     The Plaintiffs retained an independent auditor to conduct a payroll audit of the Employer contributions due between January 1, 2015, and December 31, 2016. The auditor subsequently issued a report of the findings of that audit (hereinafter "Audit Report") which identified a total of $44,721.94 due for the audit period, $31,644.73 principal delinquency, $6,328.96 in liquidated damages, and $6,748.25 in interest, with interest calculated through October 31, 2017. A true and correct copy of the Audit Report with the November 30, 2017 cover letter is attached hereto as Exhibit E.

17.     The Plaintiffs have promulgated a Policy for Collection of Delinquent Contributions, Payroll Audits, Refund of Mistaken Contributions, Bonding and Contributions by Owners (hereinafter "Delinquency Policy") which sets forth the procedures for payroll audits and

explains how the interest and liquidated damages due on delinquent contributions are calculated. The Delinquency Policy is adopted by reference in Article X, Section 2 of the SCA CBA and Article IX, Section 8 of the MCA CBA. See Exhibit B at p. 27, Exhibit D at p. 22. A true and correct copy of the Delinquency Policy is attached hereto as Exhibit F.

18.     Section 4, paragraph 7 of the Delinquency Policy states that a contributing employer may be charged the cost of a payroll audit if the Board of Trustees that govern the Plaintiffs "in their sole discretion, finds that there is a pattern of substantial underpayment or failure to comply with the Contribution obligation by an employer[.]" Exhibit F, p. 6.

19.     In light of the substantial principal amounts revealed to be due by the Audit Report, the Trustees concluded that the Company demonstrated a pattern of substantial underpayment and determined that the Company should be charged for the cost of conducting the audit.

20.     On November 30, 2017, the Plaintiffs, through the benefit plans administrator Robert Winther, sent a copy of the audit report to the Employer, to the attention of Defendant O'Mara, demanding payment for the principal, interest, and liquidated damages, as well as $4,975.00 in audit fees. Exhibit E, p. 1.

21.     Neither O'Mara nor any other representative of the Company responded to the November 30, 2017 letter.

22.     On January 23, 2018, Plaintiffs, through their counsel, sent a letter to the Company to the attention of Defendant O'Mara demanding payment of the delinquent amounts revealed by the audit, including interest, liquidated damages, and audit fees. A true and correct copy of the July 12, 2017 letter is attached hereto as Exhibit G.

23.     Neither O'Mara nor any other representative of the Company responded to the January 23, 2018 letter.

24.     The Employer's refusal to pay breaches the terms of the collective bargaining agreements and constitutes a delinquency under ERISA, 29 U.S.C. § 1145.

25.     In addition to the delinquent principal, the Employer owes interest, liquidated damages, attorneys' fees and costs, and audit fees pursuant to 29 U.S.C. §1132(g)(2), Article X, Section 2 of the SCA CBA (Exhibit B, p. 27), Article IX, Section 8 of the MCA CBA (Exhibit D, p. 22), and the Delinquency Policy.

WHEREFORE, Plaintiffs ask that the Court:

(1)     Enter judgment in favor of the Plaintiffs and against the Employer in the amount of $31,644.73 for unpaid principal contributions, pursuant to the collective bargaining agreements and 29 U.S.C. §1132(g)(2)(A);

(2)     Enter judgment in favor of the Plaintiffs and against the Employer for interest which will include $6,748.25 shown in the Audit Report, plus such other interest that has accrued and will subsequently accrue after October 31, 2017, pursuant to the collective bargaining agreements, the Delinquency Policy and 29 U.S.C. §1132(g)(2)(B);

(3)     Enter judgment in favor of the Plaintiffs and against the Employer for $6,328.96 in liquidated damages pursuant to the collective bargaining agreements, the Delinquency Policy, and 29 U.S.C. §1132(g)(2)(C)(ii);

(4)     Enter judgment in favor of the Plaintiffs and against the Employer for attorneys' fees and costs, pursuant to the collective bargaining agreements and 29 U.S.C. §1132(g)(2)(D);

(5)     Enter judgment in favor of Plaintiffs and against the Employer for $4,975.00 in audit fees pursuant to the collective bargaining agreements, the Delinquency Policy, and 29 U.S.C. §1132(g)(2)(E); and

(6)     Grant any other further relief the court finds just and proper.

**COUNT TWO**
**DELINQUENT CONTRIBUTIONS**
**ERISA Funds v. O'Mara**

26.     The above paragraphs are incorporated herein by reference as though duly set forth

at length.

27.     Article IV, Section 1(g) of the Pension Fund's Trust Agreement, as amended on

January 17, 2008, Article IV, Section 1(g) of the Welfare Fund's Trust Agreement, as amended on

January 17, 2008, Article IV, Section 1(g) of the SRP's Trust Agreement, as amended on January

17, 2008, Article IV, Section 1(f) of the Apprenticeship Fund's Trust Agreement, as amended on

March 3, 2008, and Article X, Section F of the Scholarship Fund's Trust Agreement, as amended

on March 3, 2008,  (collectively, the "Trust Agreements") defines Fund assets as follows:

> Fund Assets means: (1) such sums of money that have been or will
> be paid, or which are due and owing to the Fund by covered
> Employers as required by Collective Bargaining Agreements of
> Participation Agreements…

True and correct copies of the above quoted pages from the Trust Agreements are attached hereto

as Exhibit H.

28.     The Employer is a "covered Employer" within the meaning of the Trust

Agreements as it is a signatory to collective bargaining agreements which require it to contribute

to the various ERISA Funds.

29.     As the owner and president of the Employer, O'Mara was ultimately responsible

for preparing, reviewing, authorizing payment, and submitting monthly reports and contributions

to the ERISA Funds.  In that capacity, Defendant O'Mara exercised control over the disposition

of monies that became plan assets immediately upon the monthly contribution due date.

30.     O'Mara, individually and collectively, maintained both formal and practical authority to direct that proper contributions be paid to the ERISA Funds at all times relevant hereto.

31.     O'Mara, individually and collectively, exercised authority and control over the management and disposition of the ERISA Funds' assets.

32.     As a result of exercising control and management over the ERISA Funds' assets, O'Mara is a fiduciary under ERISA.

33.     Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries… for the exclusive purpose of… providing benefits to [them]." 29 U.S.C. §1104(a)(1).

34.     A fiduciary who uses plan assets to satisfy other personal or business obligations breaches his/her fiduciary duty under ERISA.

35.     Because O'Mara willfully and intentionally used the ERISA Funds' plan assets contained within their personal accounts and the accounts of the Employer for purposes other than the exclusive purpose of providing benefits to the ERISA Funds' participants and beneficiaries, Defendant O'Mara breached her fiduciary duty to the ERISA Funds.

36.     Under ERISA, "any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries" is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore the plan any profits of such fiduciary which have been made through the use of assets by the plan fiduciary[.]" 29 U.S.C. §1109(a).

37.     Of the principal delinquency claimed in Count One, $29,197.89 is due to the ERISA Funds.

9

38.     O'Mara is jointly and severally liable with the Employer for the $29,197.89 in principal contributions due to the ERISA Funds, as well as interest, liquidated damages, attorneys' fees and costs, and audit fees thereupon.

WHEREFORE, Plaintiffs ask that the Court:

(1)     Declare that O'Mara is a fiduciary of the ERISA Funds by virtue of his exercise of control of plan assets and that O'Mara be found in breach of his fiduciary duties;

(2)     Enter judgment in favor of the ERISA Funds and against O'Mara, jointly and severally with Employer, for $29,197.89 of the principal amounts awarded in Count One, plus interest, liquidated damages, attorneys' fees and costs, and audit fees attributable thereto.

CLEARY, JOSEM & TRIGIANI, LLP

BY:

WILLIAM T. JOSEM, ESQUIRE
JEREMY E. MEYER, ESQUIRE
Constitution Place
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
(215) 735-9099

Dated: February 21, 2018